**GARY WAYNE BROWN, II**                                      **PLAINTIFF**

**VERSUS**                          **CIVIL ACTION NO.: 1:08cv1312-HSO-JMR**

**JACKSON COUNTY, MISSISSIPPI;
KEN BROADUS, Major and GEROME
BARNS, Nurse**                                         **DEFENDANTS**

_____

## REPORT & RECOMMENDATION:

This matter is before the Court pursuant to a Motion [32-1] for Summary Judgment filed

on behalf of the Defendants, Jackson County, Mississippi;  Ken Broadus, Director of the Jackson

County Adult Detention Center and Jarome Barnes (incorrectly designated as Gerome Barns) on

September 22, 2009.   Defendants' Motion is accompanied by a Memorandum [33-1] in Support

thereof.   To date, Plaintiff has not filed a Response in Opposition.   The Court being fully

advised in the premises, and after carefully considering the pleadings filed as a matter of record,

along with the applicable law, recommends that Defendants' Motion [32-1] for Summary

Judgment be granted.

## STATEMENT OF THE CASE:

Plaintiff filed this *pro se* § 1983 action against Major Ken Broadus, Nurse Jarome Barnes

and Jackson County, Mississippi (collectively hereinafter "Defendants") alleging that he suffered

violations of his constitutional rights while being detained as a pretrial detainee at the Jackson

County Adult Detention Center ("JCADC").

## FACTS:

Plaintiff was arrested on a charge of Manufacturing Methamphetamine, a Schedule II

Controlled Substance. On March 17, 2008, Plaintiff was booked and detained at the JCADC to await trial on his pending charge. On October 8, 2008, Plaintiff filed his original Complaint [1-1] against Jackson County Adult Detention Center, Major Ken Broadus, Nurse Jarome Barnes and Cid Ross. On October 27, 2008, Plaintiff filed an Amended Complaint [7-1] voluntarily dismissing Jackson County Adult Detention Center and Dr. Cid Ross, and adding as a Defendant, Jackson County, Mississippi.

In his Complaint, Plaintiff alleges that he has been denied adequate medical treatment during his incarceration at the JCADC. (*See* Pl.'s Compl. [1-1].) Specifically, Plaintiff claims that on the weekend of April 19, 2008, his right leg began to swell. *Id.* Further, Plaintiff claims that between April 21, 2008 and May 1, 2008, the day he was taken to the hospital, the right side of his body became swollen. *Id.* Plaintiff asserts that his sick call requests to Defendants Broadus and Barnes went unanswered, and that it took too long to be taken to the hospital were he was diagnosed with a blood clot on his back. *Id.* Plaintiff claims during this time he was in severe pain and filled out a medical request form everyday. *Id.* Also, Plaintiff claims that Defendants were not monitoring his blood tests. *Id.* Defendants filed the present Motion [32-1] for Summary Judgment on September 22, 2009.

## STANDARD OF REVIEW:

Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. FED. R. CIV. P. 56(c). "The mere existence of a factual dispute does not by itself preclude the granting of summary judgment." *St. Amant v. Benoit*, 806 F.2d 1294, 1296-97 (5th Cir. 1987). "The requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986).

In other words, "[o]nly disputes over the facts that might effect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* Furthermore, it is well settled in this circuit that "[b]are bones allegations are insufficient to withstand summary judgment because the opposing party must counter factual allegations by the moving party with specific, factual disputes; mere general allegations are not a sufficient response.'" *Howard v. City of Greenwood*, 783 F.2d 1311, 1315 (5th Cir. 1986) (*quoting Nicholas Acoustics Specialty Co. v. H & M Constr. Co.*, 695 F.2d 839, 845 (5th Cir. 1983)).

In considering a motion for summary judgment, the trial court views the evidence in the light most favorable to the party resisting the motion. *See Howard v. City of Greenwood*, 783 F.2d 1311, 1315 (5th Cir. 1986). To survive summary judgment, the non-movant must demonstrate the existence of a disputed issue of material fact. *See Anderson v. Liberty Lobby*, 477 U.S. 242, 247-48 (1986). To avoid the entry of summary judgment, the non-moving party must bring forth significant probative evidence demonstrating the existence of a triable issue of fact. *See Howard*, 783 F.2d at 1315.

42 U.S.C. § 1983 imposes liability upon any person who, acting under the color of state law, deprives another of federally protected rights. Therefore, section 1983 affords a remedy to those who suffer, as a result of state action, deprivation of rights, privileges, or immunities secured by the Constitution and the Laws of the United States. *White v. Thomas*, 660 F. 2d 680,693 (5th Cir. 1981). A plaintiff cannot succeed merely by showing any deprivation of his rights. Section 1983 was intended to protect rights protected by federal law. *Karmi-Panahi v. Los Angles Police Dept.*, 839 F. 2d 621 (9th Cir. 1988); *Wright v. Collins*, 766 F.2d 841 (5th Cir. 1985).

Under 42 U.S.C. § 1983, liability may be imposed upon any person who, acting under the

color of state law, deprives another of federally protected rights. It neither provides a general remedy for the alleged tort of state officials, nor opens the federal courthouse doors to relieve complaints of all who suffer injury at the hands of the state or its officers. Municipal liability under section 1983 requires proof of three elements: a policymaker; an official policy; and a violation of constitutional rights whose "moving force" is the policy or custom. *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001); *Monell v. Dep't of Soc. Services*, 436 U.S. 658, 694 (1978). *Monell* and later decisions reject municipal liability predicated on *respondeat superior*, because the text of section 1983 will not bear such reading. *Board of Comm'rs of Bryan County v. Brown*, 520 U.S. 397, 403 (1997). "Congress did not intend municipalities to be held liable unless action pursuant to official municipal policy of some nature caused a constitutional tort." *Monell*, 436 U.S. at 691.

A suit against a governmental agent or officer in his official capacity is a suit against the office that the employee holds and not against the actual employee. *See Kentucky v. Graham*, 473 U.S. 159, 165 (1985). The three requirements for municipal liability outlined in *Piotrowski* are necessary in order to distinguish between individual violations by local employees and those that can be fairly attributed to conduct by the governmental entity itself. *See Piotrowski*, 237 F.3d at 578-79. The United States Supreme Court has clearly emphasized the necessity of an official policy as a predicate to recovery under a theory of municipal liability:

> [A] local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents. Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983.

*Monell*, 436 U.S. at 695. Therefore, municipalities may not be held liable for acts of lower level employees, but may be held liable for constitutional violations committed pursuant to an official

policy or custom. *Piotrowski*, 237 F.3d at 578.

In addition, not only must the plaintiff establish that a policy or custom of the municipality was the "moving force" behind the alleged violation of a constitutional right; he must also establish that the municipality was "deliberately indifferent" to the known consequences of the policy. *Id.* at 580; *See Lawson v. Dallas County*, 286 F.3d 257, 264 (5th Cir. 2002) ("[T]he municipality must maintain its official policy with deliberate indifference to a constitutionally protected right."). Deliberate indifference is an objective standard which encompasses "not only what the policymaker actually knew but what he should have known, given the facts and circumstances surrounding the official policy and its impact on the plaintiff's rights." *Lawson*, 286 F.3d at 264. The Fifth Circuit has noted that the plaintiff bears an "extremely heavy burden" in establishing both the municipality's deliberate indifference and a causal link between the alleged custom and the alleged constitutional violation. *Peters v. City of Biloxi*, 57 F.Supp. 2d 366, 376 (S.D. Miss. 1999). *See Snyder v. Trepagnier*, 142 F.3d 791, 798 (5th Cir. 1998); *Piotrowski*, 237 F.3d at 580 (stating that these two requirements "must not be diluted").

## ANALYSIS:

As a pretrial detainee, Plaintiff's constitutional rights flow from the Fourteenth Amendment Due Process Clause rather than the Eighth Amendment prohibition against cruel and unusual punishment. Because they have not yet been convicted of the crime with which they are charged, pretrial detainees have a due process right not to be punished for that crime. *Bell v. Wolfish,* 441 U.S. 520, 535 (1979). The Supreme Court has stated the distinction between conditions that may be constitutionally imposed on convicted prisoners and conditions that may be imposed on pretrial detainees as follows:

[T]he State does not acquire the power to punish with which the

Eighth Amendment is concerned until after it has secured a formal adjudication of guilt in accordance with due process of law. **Where the State seeks to impose punishment without such an adjudication, the pertinent constitutional guarantee is the Due Process Clause of the Fourteenth Amendment.**

*Ingraham v. Wright,* 430 U.S. 651, 671-72 (1977) (emphasis added).

The appropriate standard to apply in analyzing constitutional challenges by pretrial detainees depends on whether the alleged unconstitutional conduct is a "condition of confinement"[1] or an "episodic act or omission." *See Scott v. Moore,* 114 F.3d 51, 53 (5th Cir.1997) (en banc). The Fourteenth Amendment protects pretrial detainees from the imposition of conditions of confinement that constitute "punishment." *Hamilton v. Lyons,* 74 F.3d 99, 103 (5th Cir.1996). "Punishment" may be loosely defined as "a restriction or condition that is not reasonably related to a legitimate goal-if it is arbitrary or purposeless." *Bell*, 441 U.S. at 539. "Reasonably related" means that the restriction is (1) rationally related to a legitimate governmental purpose, and (2) not excessive in relation to that purpose. *Id.* at 561. "[T]his test is deferential to jail rulemaking; it is in essence a rational basis test of the validity of jail rules." *Hare v. City of Corinth, Miss.,* 74 F.3d 633, 646 (5th Cir.1996).

When a pre-trial detainee alleges unconstitutional conduct which involves an episodic act or omission, the question is whether the state official acted with deliberate indifference to the inmate's constitutional rights. *Gibbs v. Grimmette,* 254 F.3d 545, 548 (5th Cir. 2001). When the alleged

---

[1] The following were deemed to be conditions-of-confinement cases: *Murphy v. Walker,* 51 F.3d 714 (7th Cir.1995) (revocation of telephone, television, and cigarette privileges); *Collazo-Leon v. United States Bureau of Prisons,* 51 F.3d 315 (1st Cir.1995) (disciplinary segregation and denial of telephone and visitation privileges); *United States v. Millan,* 4 F.3d 1038 (2d Cir.1993) (length of pre-trial detention); *Hause v. Vaught,* 993 F.2d 1079 (4th Cir.1993) (restriction on mail privileges); *Brogsdale v. Barry,* 926 F.2d 1184 (D.C.Cir.1991) (overcrowding); *Lyons v. Powell,* 838 F.2d 28 (1st Cir.1988) (22-23-hour confinement and placement of mattress on floor); *Fredericks v. Huggins,* 711 F.2d 31 (4th Cir.1983) (policy of refusing detainees access to drugs for rehabilitation); *Lareau v. Manson,* 651 F.2d 96 (2d Cir.1981) (overcrowding).

constitutional violation is a particular act or omission by an individual that points to a derivative policy or custom of the municipality, the deliberate indifference standard is also appropriate. *Scott,* 114 F.3d at 53-54. To prove deliberate indifference, a pretrial detainee must show that the state official knew of and disregarded an excessive risk to the inmate's health or safety. *See Stewart v. Murphy,* 174 F.3d 530, 534 (5th Cir.1999).

There is no significant distinction between pretrial detainees and convicted inmates when the denial of medical care is at issue. *Gibbs*, 254 F.3d at 548. When an alleged constitutional violation for failure to provide adequate medical care stems from an episodic act or omission, the question is whether the state official acted with deliberate indifference to the individual's constitutional rights. *Id.* In order to prove deliberate indifference to serious medical needs, and thus a constitutional violation, a prisoner must show that the state official knew of and disregarded an excessive risk to inmate health or safety. *See Stewart v. Murphy*, 174 F.3d 530, 534-35 (5th Cir. 1999).

Deliberate indifference is more than mere negligence in providing or failing to provide medical treatment. *See Mendoza v. Lynaugh*, 989 F.2d 191, 193 (5th Cir. 1993); *Williams v. Treen*, 671 F.2d 892, 901 (5th Cir. 1982). The law is clear that unsuccessful medical treatment, mere negligence, neglect, nor medical malpractice gives rise to a section 1983 cause of action. *See Varnado v. Lynaugh*, 920 F.2d 320, 321 (5th Cir. 1991). Furthermore, disagreement with medical treatment alone is insufficient to support a claim under section 1983. Rather, "the plaintiff must show that the officials 'refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would evince a wanton disregard for any serious medical needs.'" *Domino v. Tex. Dept. of Criminal Justice*, 239 F.3d 752, 756 (5th Cir. 2001)(quoting *Johnson v. Treen*, 759 F.2d 1236, 1238 (5th Cir. 1985)).

Plaintiff alleges that Defendants Broadus and Barnes are liable in both their official and

individual capacities for denial of adequate medical treatment which constituted deliberate indifference to his constitutional rights.[2] Plaintiff claims that his right leg and right side began to swell, and that he made numerous sick call requests seeking medical attention but they went unanswered. Also, Plaintiff claims that he was on blood thinner and that Defendants did not monitor his blood tests. Plaintiff's official capacity claims against Defendants are, in reality, claims against the offices which they occupied at the time of the alleged incident and, ultimately, Jackson County. Therefore, to the extent Plaintiff brings this action against Defendants in their official capacities, he must establish a constitutional violation, and in addition must satisfy the three requirements necessary to impose municipal liability: that the JCADC had an official policy, practice or custom which would subject it to section 1983 liability; that the official policy is linked to the constitutional violation(s); and that the official policy reflects the JCADC's deliberate indifference to that injury. *See Lawson*, 286 F.3d at 263.

Plaintiff claims that Defendants failed to provide him with proper medical care. Specifically, Plaintiff alleges that between April 19, 2008 and May 1, 2008, his right leg and right side of his body began to swell, and his written and verbal medical requests to Defendants went unanswered. Plaintiff was taken to the Singing River Hospital on May 1, 2008, where he claims he was diagnosed with a blood clot on his back. Plaintiff claims that before he was taken to the hospital he was in severe pain and thought he was going to die. Lastly, Plaintiff asserts that he was on blood thinner and the Defendants did not monitor his blood tests. However, other than the above mentioned allegations of inadequate medical care, Plaintiff presents no evidence that an official policy of the

---

[2]The Court notes that Plaintiff does not specify whether his claims are against Defendants in their individual capacities, their official capacities, or both. Because *pro se* complaints must be construed liberally, the Court will interpret Plaintiff's Complaint to allege claims against Defendants in both their individual and official capacities. *See Williams v. Love,* 2006 WL 1581908, *5 (S.D.Tex. 2006).

JCADC existed which violated his constitutional rights.  The Court finds that such bare allegations, without more, are simply insufficient to support a claim that there existed a policy or custom which was the moving force behind any alleged constitutional violation.  At best, Plaintiff's assertions amount to isolated incidents of negligent conduct, which, by themselves, are insufficient to support the instant official capacity claims against Defendants.

To the extent Plaintiff's Complaint seeks liability against Defendants in their individual capacities, Defendants have pled the defense of qualified immunity.  In assessing a claim of qualified immunity, the determination must first be made as to whether the plaintiff has alleged a violation of a clearly established  constitutional  right. *Siegert,* 500 U.S. at 231.  When an alleged constitutional violation for failure to provide adequate medical care stems from an episodic act or omission, the question is whether the state official acted with deliberate indifference to the individual's constitutional rights. *Gibbs*, 254 F.3d at 548.  In order to prove deliberate indifference to serious medical needs, and thus a constitutional violation, a prisoner must show that the state official knew of and disregarded an excessive risk to inmate health or safety. *See Stewart v. Murphy*, 174 F.3d 530, 534-35 (5th Cir. 1999).

As noted earlier, deliberate indifference is more than mere negligence in providing or failing to provide medical treatment. *See Mendoza*, 989 F.2d at 193; *Williams*, 671 F.2d at 901.  The law is clear that unsuccessful medical treatment, mere negligence, neglect, nor medical malpractice gives rise to a section 1983 cause of action. *See Varnado*, 920 F.2d at 321. Furthermore, disagreement with medical treatment alone is insufficient to support a claim under section 1983.  Rather, "the plaintiff must show that the 'officials refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would evince a wanton disregard for any serious medical needs.'" *Domino*, 239 F.3d at 756 (quoting *Johnson*, 759 F.2d at 1238).

Defendants contend, and the Court agrees, that Plaintiff has failed to meet his burden of establishing that Defendants were deliberately indifferent to his serious medical needs. Plaintiff's primary claim is that his sick call requests went ignored from April 19, 2008 to May 1, 2008, a period of thirteen (13) days, and thus he was left in severe pain. However, Plaintiff does not submit those requests to the Court, nor does Plaintiff submit any proof whatsoever in support of his allegations.

Plaintiff entered the JCADC on March 17, 2008. (*See* Ex. "1" Attach. Mot. [32-1] Summ. J.) Before entering the JCADC, Plaintiff was burned in a methamphetamine fire. (*See* Ex. "5" Attach. [35-1] Mot. Summ. J.) On March 25, 2008, Plaintiff was seen by Dr. William Ross in the JCADC clinic for pain and itching resulting from said burns and was provided medication. *Id.* Between March 25, 2008 and November 2008, Plaintiff received medication once or twice daily from the nursing staff at the JCADC, except for the seven days Plaintiff was at the Singing River Hospital, May 1 - 7, 2008. (*See* Ex. "6" Attach. [35-1] Mot. Summ. J.) Defendants note that between April 19, 2008 and April 27, 2008, Plaintiff complained of leg and back pain to Nurse Junna Jackson who was distributing his medication. (*See* Ex. "4" Attach. [35-1] Mot. Summ. J.) On several occasions between April 19, 2008 and April 27, 2008, Nurse Jackson examined Plaintiff outside his cell block regarding his leg and back pain. *Id.* On April 27, 2008, Plaintiff was examined by Defendant Barnes in the JCADC clinic, and Defendant Barnes noted that a possible boil was forming on Plaintiff's upper right back and it was to be monitored. (*See* Ex. "5" Attach. [35-1] Mot. Summ. J.) On April 28, 2008, Plaintiff returned to the JCADC clinic complaining of soreness on his right side and was administered ibuprofen by Nurse Jackson. *Id.*

On May 1, 2008, Plaintiff was examined at the JCADC clinic and sent to Singing River Hospital for a large lump that had developed on his upper right side. *Id.* After examining Plaintiff,

the hospital informed Nurse Jackson that he was being admitted for an abscess and abnormal INR. (*See* Exs. "4," "7" Attach. [35-1] Mot. Summ. J.) Plaintiff was discharged from the hospital on May 7, 2008. (*See* Ex. "7" Attach. [35-1] Mot. Summ. J.) Upon return to the JCADC, Plaintiff was administered antibiotics and daily wound care. (*See* Ex. "6" Attach. [35-1] Mot. Summ. J.) On June 7, 2008, Plaintiff's wounds were checked at the JCADC clinic and he was provided antibiotic ointment and bandages. (*See* Ex. "5" Attach. [35-1] Mot. Summ. J.) Plaintiff returned to the clinic on July 22, 2008, complaining of leg pain and cramps surrounding his burns and scars. (*See* Exs. "5," "8" Attach. [35-1] Mot. Summ. J.) After examination, Plaintiff was provided support hose to wear daily. *Id.*

Plaintiff has failed to prove that Defendants alleged inattention amounted to deliberate indifference to an excessive risk to his safety or health. Plaintiff has not submitted any sick call request or grievance that went unanswered. Plaintiff has not presented any evidence that Defendants refused to treat him, ignored his complaints or intentionally treated him incorrectly. To the contrary, the evidence of record shows that Plaintiff received medical attention appropriate to his needs. Between April 19, 2008 and April 27, 2008, Plaintiff was seen daily by the medical staff at the JCADC and on several occasions examined by Nurse Jackson. Plaintiff was also examined in the JCADC clinic three (3) times in a five (5) day period for complaints of soreness in his upper back. Defendant Barnes noted a possible boil forming on Plaintiff's back on April 27, 2008, and instructed that it be monitored. The next day, Plaintiff returned to the clinic and was administered ibuprofen for soreness in his back. Three days later, on May 1, 2008, Plaintiff was examined at the JCADC clinic and a large lump was discovered to have developed on his upper right side. That day, Plaintiff was taken to the Singing River Hospital where he was kept until May 7, 2008. On his return to the JCADC, Plaintiff received antibiotics, wound care, and continuation of his medications. As stated

earlier, disagreement with medical treatment does not constitute a constitutional violation. *Norman v. Dimazawa*, 122 F.3d 286 (5th Cir. 1997). The record demonstrates that the Defendants examined and monitored Plaintiff daily and when a large lump formed on his back he was taken to the hospital for treatment. The Court finds that Plaintiff has failed to prove that Defendants were in any way deliberately indifferent to an excessive risk to Plaintiff's safety or health. This issue does not rise to an actionable claim.

Also, Plaintiff claims that he was taking blood thinner and Defendants were not monitoring his blood tests. (*See* Pl.'s Compl. [1-1].) However, Plaintiff has not presented any evidence that this alleged lack of testing caused any injury. Plaintiff has not even alleged any injury as a result of this alleged lack of testing. There is no evidence in the record that Defendants knew of and disregarded an excessive risk to Plaintiff's health or safety. Furthermore, negligence, if any, does not rise to the level of a constitutional violation. *Davidson v. Cannon*, 474 U.S. 344, 47-48 (1986).

The Court also finds that to the extent Plaintiff's complaint could be construed to allege claims under state law, they are barred by provisions contained in the Mississippi Tort Claims Act, MISS. CODE ANN. § 11-46-1, *et seq*. Specifically, the Act provides that a government subdivision shall not be liable for a claim "of any claimant who at the time the claim arises is an inmate of any detention center, jail, workhouse, penal farm, penitentiary, or other such institution regardless of whether such claimant is or is not an inmate . . . when the claim is filed." MISS. CODE ANN. § 11-46-9(1)(m). The Court finds that because Plaintiff was an inmate at the time these events allegedly occurred, any claims arising under Mississippi law as a result of these alleged events are barred by the above provision.

## RECOMMENDATION:

After considering the evidence of record, the Court concludes that Plaintiff has failed to

create a genuine issue as to whether Defendants violated Plaintiff's constitutional rights during his incarceration as a pretrial detainee at the JCADC. Plaintiff's allegations that he was denied adequate medical care do not rise to the level of constitutional violations. Accordingly, the Court recommends that Defendants are entitled to summary judgment, and Plaintiff's official and individual capacity claims should be dismissed with prejudice.

In accordance with the Rules of this Court, any party, within fourteen (14) days after being served a copy of this recommendation, may serve and file written objections to the recommendations, with a copy to the District Judge, the U.S. Magistrate Judge, and the opposing party. The District Judge at that time may accept, reject or modify in whole or in part, the recommendation of the Magistrate Judge, or may receive further evidence or recommit the matter to this Court with instructions. Failure to timely file written objections to proposed findings, conclusions, and recommendations contained in this report will bar an aggrieved party, except on the grounds of plain error, from attacking on appeal unobjected-to proposed factual findings and legal conclusions accepted by the District Court. *Douglass v. United States Auto Ass'n*, 79 F.3d 1415, 1425 (5th Cir. 1996).

**SO ORDERED** this the ___22nd___ day of January, 2010.

_____
s/ John M. Roper, Sr.
CHIEF UNITED STATES MAGISTRATE JUDGE